2024 IL App (1st) 230554-U

No. 1-23-0554

Order filed February 21, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SAME CONDITION, LLC, an Illinois Limited Liability Company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff and Counterdefendant-Appellant, | ) ) | |
| v. | ) ) | No. 19 L 5407 |
| CODAL, INC., an Illinois Corporation, | ) ) | |
| Defendant and Counterplaintiff-Appellee | ) ) | |
| (Munish Kumar, a/k/a Munish Kumar Raizada, | ) ) ) | Honorable Diane M. Shelley and Thomas More Donnelly, |
| Counterdefendant-Appellant). | ) | Judges presiding. |

JUSTICE VAN TINE delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We dismiss Same Condition and Munish Kumar's appeal of a permanent injunction that the circuit court entered against them because the law of the case is that we lack jurisdiction to hear that appeal. We reverse the circuit court's grant of summary judgment to Codal on its defamation *per quod* counterclaim and enter judgment in Same Condition's favor on that counterclaim because Codal failed to establish

special damages. We affirm the circuit court's award of attorney fees and costs to Codal for prevailing at summary judgment on its breach of contract counterclaim.

¶ 2     Same Condition, LLC, and its president, Munish Kumar, appeal from the circuit court's grant of summary judgment in favor of Codal, Inc., on Codal's counterclaim for defamation *per quod*, a permanent injunction that the court entered against Same Condition in the summary judgment ruling, and the court's award of $309,741.10 in attorney fees and costs to Codal for prevailing at summary judgment on its breach of contract counterclaim.[1] For the following reasons, we dismiss Same Condition's appeal of the injunction due to lack of jurisdiction, we reverse the grant of summary judgment to Codal and enter judgment in Same Condition's favor on the defamation *per quod* counterclaim, and we affirm the circuit court's award of attorney fees and costs.

¶ 3                                   I. BACKGROUND

¶ 4     The procedural history of this case is extensive and has already been discussed at length in three related appeals. *Same Condition v. Codal*, 2021 IL App (1st) 201187 (*Same Condition I*); *Same Condition v. Codal*, 2022 IL App (1st) 220687-U (*Same Condition II*); *Same Condition v. Codal*, 2023 IL App (1st) 221441-U (*Same Condition III*). We set out only the facts that are relevant to the issues in this appeal.

¶ 5     This lawsuit arises out of a 2017 contract in which Same Condition hired Codal to develop a medical software application. Munish Kumar is Same Condition's president. According to Same Condition, Codal delivered the application six months late and in a state that was inadequate for public release. Three months after that, Codal indicated that it needed at least 100 more hours of

---

[1]Generally, we will refer to Same Condition and Kumar collectively as "Same Condition." Where necessary, we will differentiate between the company and Kumar, its principal.

work to fix the defects and enable public release of the application. Same Condition began posting disparaging comments online about Codal. In brief, Same Condition repeatedly accused Codal of "unethical business practices," being "incompetent," and having "cheated" Same Condition on Twitter, LinkedIn, Google, and other social media platforms, as well as a blog that Same Condition created at the address codalsucks.blogspot.com.

¶ 6     In 2019, Same Condition sued Codal for breach of contract, fraud, and unjust enrichment. Codal brought counterclaims for breach of contract, unjust enrichment, *quantum meruit*, defamation *per se*, defamation *per quod*, commercial disparagement, and violation of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2(a)(8) (West 2018)). Codal's breach of contract counterclaim alleged that Same Condition did not pay an invoice for $30,750. Codal's non-contract counterclaims were based on Same Condition's disparaging online comments.

¶ 7     As the case progressed, Same Condition continued posting critical comments about Codal online. *Same Condition I*, 2021 IL App (1st) 201187, ¶ 1. Codal moved for a preliminary injunction and a restraining order to stop such conduct. *Id.* The circuit court denied those motions but, using its inherent authority to manage the case, prohibited Same Condition from making further posts about Codal. *Id.* Same Condition appealed, arguing that the circuit court's order was an unconstitutional restriction on its free speech. *Id.* ¶ 2. We agreed and vacated the circuit court's order. *Id.*

¶ 8     In September 2021, Codal moved for summary judgment on all claims and counterclaims. Relevant here, Codal sought summary judgment on its counterclaim for defamation *per quod*, arguing that "Same Condition posted hundreds of defamatory statements on social media including allegations that Codal is incompetent, that Codal cheated [Same Condition], that Codal is

unprofessional, [and] that Codal unethically charged U.S. based rates for development work that took place in India." In support of this claim, Codal explained how each of Same Condition's online statements was false. Codal did not allege or seek money damages for defamation. However, Codal requested an injunction requiring Same Condition to "remove all published statements about Codal" and to "refrain from publishing similar statements about Codal in the future." Same Condition did not file a response to Codal's motion for summary judgment.[2]

¶ 9     On December 7, 2021, the circuit court granted summary judgment in Codal's favor on all of Same Condition's claims, as well as Codal's counterclaims for breach of contract, defamation *per quod*, and commercial disparagement. The court denied summary judgment on Codal's defamation *per se* and Deceptive Trade Practices Act counterclaims. The court awarded Codal "$30,750 in expectation damages plus applicable late fees for Same Condition's breach of contract," but awarded no damages on the defamation and commercial disparagement claims. The court found that

> "[a]lthough *** Dr. Munish Kumar's statements on social media and various other online forums are defamatory, Codal is not entitled to receive damages because this court has not been presented with evidence of lost earnings, future lost earning capacity, and other lost business or economic opportunities that it suffered or is likely to suffer as a result of the defamatory statement[s]."

However, the court entered the following injunction:

---

[2]The record contains two *ex parte* letters from Kumar to the circuit court judge dated August 29 and 31, 2021, which appear to request denial of Codal's motion for summary judgment. However, the letters contain no legal argument, citation to authority, or citation to the record, and are largely incomprehensible.

"(a) Dr. Kumar and/or Same Condition must remove all published statements about Codal and/or its clients, customers, employees, agents, principals, representatives, affiliates, independent contractors, officers, directors, managers, members, shareholders, attorneys, subsidiaries, insurers, heirs, successors, and assigns within thirty (30) days of this Order;

(b) Dr. Kumar and/or Same Condition must assign the domain name Codalsucks.blogspot.com to Codal within thirty (30) days of this Order; and

(c) Dr. Kumar, Same Condition, and any of its employees, agents, principals, representatives, affiliates, independent contractors, officers, directors, managers, members, shareholders, attorneys, subsidiaries, insurers, heirs, successors, and assigns must refrain from publishing similar statements about Codal and/or its clients, customers, employees, agents, principals, representatives, affiliates, independent contractors, officers, directors, managers, members, shareholders, attorneys, subsidiaries, insurers, heirs, successors, and assigns in the future."

Finally, the court awarded Codal attorney fees and costs pursuant to section 10.2 of the parties' contract and set a briefing schedule for its fee petition.

¶ 10    Codal filed a petition seeking $311,247.25 in attorney fees and costs. In support of its petition, Codal submitted evidence of its attorneys' experience and hourly rates, typical hourly rates for attorneys in the field, and detailed billing records reflecting the attorneys' work on this case. Same Condition did not file a response to the fee petition. However, Kumar sent an *ex parte* letter to the circuit court judge requesting that the court "summarily dismiss the [f]ee petition by Codal as they have already sucked money out of [his] startup and are now flexing muscles for just

being a rich, resourceful and unethical business or company being aided by equally fat and resourceful attorneys."

¶ 11    On January 24, 2022, the court awarded Codal attorney fees and costs totaling $309,741.10. The court explained that Codal presented detailed billing records and evidence of its attorneys' hourly rates, whereas Same Condition "provided no evidence in its [o]pposition or during the hearing as to why the specific fees or costs included in the [f]ee [a]ward are unreasonable" and "generally argued that no fees should be awarded." The court awarded Codal all requested fees and costs, less $900 in time billed by paralegals and $563.13 in firm overhead costs.[3]

¶ 12    On February 23, 2022, Same Condition filed a motion to vacate or reconsider the summary judgment and attorney fees orders pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2022)). In relevant part, Same Condition argued that the permanent injunction was an unconstitutional prior restraint on its right to free speech. The motion did not address the attorney fees and costs award. The court denied the motion to vacate or reconsider. Same Condition appealed the denial of its motion to vacate or reconsider, which initiated *Same Condition II*. We dismissed the appeal for lack of jurisdiction because Same Condition's motion to vacate or reconsider was untimely. *Same Condition II*, 2022 IL App (1st) 220687-U, ¶ 4.

¶ 13    While the *Same Condition II* appeal was pending, Codal pursued collection of attorney fees and costs in the circuit court by issuing citations to discover assets against Same Condition and Kumar. The circuit court quashed the citations issued to Kumar and his bank because only Same

---

[3]The circuit court's order appears to contain an arithmetic mistake. Codal's requested fees and costs of $311,247.25, which the court awarded minus $900 in paralegal time and $563.13 in overhead costs, which equals $309,784.12, not $309,741.10. However, Same Condition does not challenge the court's arithmetic on appeal.

Condition, not Kumar, was the judgment debtor as to Codal's attorney fees and costs. Codal appealed and this court affirmed, but allowed Codal to issue third-party citations to discover whether Kumar held any of Same Condition's assets that could be used to pay fees and costs. *Same Condition III*, 2023 IL App (1st) 221441-U, ¶ 1.

¶ 14    On November 14, 2022, Same Condition filed a motion in the circuit court seeking a "final order closing the case" because "all matters between the parties [were] resolved." Codal maintained that its counterclaims for defamation *per se* and violation of the Deceptive Trade Practices Act may need to be resolved at trial. The court set the case for trial in April 2023. However, on February 28, 2023, the court dismissed Codal's remaining counterclaims with prejudice by the parties' agreement, struck the trial date, and terminated this case.

¶ 15    Same Condition timely appealed.

¶ 16                                        II. ANALYSIS

¶ 17    On appeal, Same Condition challenges (1) the permanent injunction, (2) the circuit court's grant of summary judgment to Codal on its defamation *per quod* counterclaim, and (3) the award of attorney fees and costs to Codal.

¶ 18                               A. Permanent Injunction

¶ 19    Same Condition first challenges the permanent injunction that the circuit court entered in its December 7, 2021, summary judgment ruling, arguing that it is overbroad and violates the United States and Illinois constitutions. Codal maintains that we lack jurisdiction to hear Same Condition's appeal of the permanent injunction for the same reason we lacked jurisdiction in *Same Condition II*, which is now the law of the case.

¶ 20    In *Same Condition II*, we began by examining our own jurisdiction. *Same Condition II*, 2022 IL App (1st) 220687-U, ¶ 41. We explained that the injunction at issue was a permanent injunction, which is a final and appealable order. *Id.* ¶¶ 44-45. When the circuit court entered the permanent injunction on December 7, 2021, Same Condition had 30 days to file a postjudgment motion or an appeal challenging the injunction. *Id.* ¶ 48. However, Same Condition filed its postjudgment motion challenging the injunction on February 23, 2022, 78 days after the injunction was entered. *Id.* ¶ 50. Accordingly, we held that, under Section 2-1203(a) of the Code of Civil Procedure (735 ILCS 5/2-1203(a) (West 2022)) and Supreme Court Rule 304(a) (eff. Mar. 8, 2016), "after the circuit court entered the permanent injunction in this case, Same Condition and Kumar had 30 days to either appeal that order *** or to file a postjudgment motion challenging the court's entry of the permanent injunction. They did neither, resulting in our lack of jurisdiction to entertain the merits of their appeal." *Id.* ¶ 52. We dismissed Same Condition's appeal. *Id.*

¶ 21    Our holding in *Same Condition II* is the law of the case. The law of the case doctrine provides that " 'questions of law decided on a previous appeal are binding on the trial court on remand as well as on the appellate court on a subsequent appeal.' " *Grundhoefer v. Sorin*, 2018 IL App (1st) 171068, ¶ 10 (quoting *Norris v. National Union Fire Insurance Co. of Pittsburgh*, 368 Ill. App. 3d 576, 580 (2006)). This court has already held that Same Condition did not file a timely postjudgment motion or appeal challenging the permanent injunction that the circuit court entered on December 7, 2021, so we lacked jurisdiction to consider an appeal of that injunction. Nothing about that has changed since we decided *Same Condition II*, so we still lack jurisdiction now.

¶ 22    Same Condition argues that, even if we did not have jurisdiction over its appeal of the permanent injunction at the time of *Same Condition II*, we now have jurisdiction pursuant to

Supreme Court Rule 301. Rule 301 simply provides that "[e]very final judgment of a circuit court is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). That is true, but it does not change our conclusion. As we explained in *Same Condition II*, the permanent injunction entered on December 7, 2021, was a final judgment. It was appealable as of right under Rule 301, so long as Same Condition appealed within 30 days. Same Condition did not do that, and Rule 301 does not act retroactively to cure Same Condition's delay in challenging the permanent injunction.

¶ 23    Nevertheless, Same Condition contends that "Illinois jurisprudence allows for resubmission of an appeal dismissed for lack of jurisdiction when those jurisdictional defects are cured," citing *F.H. Prince & Co., Inc. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 993 (1994). That case only states that a circuit court loses jurisdiction over a final judgment 30 days after it is entered or 30 days after ruling on the last postjudgment motion, whichever is later. *Id.* at 988. That is precisely why the circuit court lost jurisdiction over the permanent injunction, and we never had jurisdiction to consider it on appeal. Accordingly, we dismiss the part of this appeal that challenges the circuit court's December 7, 2021, permanent injunction against Same Condition.

¶ 24                          B. Summary Judgment on Defamation *Per Quod*

¶ 25    Same Condition next challenges the grant of summary judgment to Codal on its defamation *per quod* counterclaim. Same Condition argues that the circuit court erred in granting summary judgment because special damages are an element of defamation *per quod* and the court found that Codal presented no evidence of special damages. Same Condition also argues that the circuit court erred in granting summary judgment based on its "non-actionable opinions."

¶ 26    A circuit court should grant summary judgment if the pleadings, depositions, affidavits, and admissions on file establish that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17. The movant has the burdens of initial production and ultimate proof. *Farmers Automobile Insurance Ass'n v. Burton*, 2012 IL App (4th) 110289, ¶ 15. When the plaintiff is the movant, it must set forth affirmative evidence of each element of the cause of action that, if uncontradicted, would entitle it to judgment as a matter of law.[4] *Id.* We review the grant of summary judgment *de novo* (*Cohen*, 2017 IL 121800, ¶ 17), meaning that we perform the same analysis as the trial court (*Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 27     The elements of defamation are that (1) the defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) the publication caused the plaintiff's damages. *Dobias v. Oak Park and River Forest High School District 200*, 2016 IL App (1st) 152205, ¶ 53. There are two types of defamation: defamation *per se* and defamation *per quod*. *Id.* Only Codal's counterclaim for defamation *per quod* is at issue in this appeal. In an action for defamation *per quod*, in addition to the other three elements of defamation, the plaintiff must prove special damages. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103 (1996); see also *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416 (1996) ("A *per quod* action requires *** allegations of specific facts establishing the plaintiff's special damages."). Special damages are "actual damages of a pecuniary nature." *Hardiman v. Aslam*, 2019 IL App (1st) 173196, ¶ 5. "In sum, to pursue a defamation *per quod* action, a plaintiff

_____

[4]Codal is the counterplaintiff, but it was the movant on its own claim for defamation *per quod* at summary judgment.

must plead and prove extrinsic facts to explain the defamatory meaning of the statement and that he suffered actual monetary damages as a result of defendants' defamatory statement." *Id.*

¶ 28   Codal's motion for summary judgment did not address damages with respect to its defamation *per quod* counterclaim.[5] The motion claimed that Same Conditions's "defamatory social media posts are eminently harmful, and the harm is apparent on its face," but did not present any evidence of actual monetary damages. Codal's statement of undisputed facts in support of its motion for summary judgment alleged that

> "As a result of the above[-]described campaign of defamation, Codal's employees have raised the issue to Codal's CEO, Keval Baxi, resulting in harm to the relationship between Codal's [*sic*] and its employees. [Exhibit cite]. In addition, [c]ustomers have raised the defamatory posts to Codal as well. As a result of the tweets and bad reviews, [c]ustomers have questioned Codal's integrity and work product, leads from social media marketing dropped, Codal had to hire PR companies to monitor and rehabilitate its social media presence, Codal has had to devote employee resources to tracking and combating the defamation, and an innumerable amount of potential customers likely never reached out who would have otherwise contacted Codal about potential projects."

In support of these allegations, Codal cited excerpts of Baxi's deposition transcript. Baxi did testify to the facts set out above, but he did not identify any specific monetary amounts that Codal lost or was forced to spend because of Same Condition's posts.

---

[5]Codal's summary judgment motion also did not cite case law stating that special damages are an element of defamation *per quod.*

¶ 29    We find that Codal did not establish special damages on its defamation *per quod* counterclaim. Codal did not allege that it sustained actual monetary damages due to Same Condition's disparaging online posts. The undisputed material facts established only that Codal suffered some degree of reputational harm among its employees and customers, and that Codal expended some unspecified amount of resources to address that issue. However, Codal did not connect those general damages to identifiable monetary losses. The last line of Codal's statement of undisputed facts is telling: "an *innumerable* amount of *potential* customers *likely* never reached out who would have otherwise contacted Codal about *potential* projects." (Emphasis added.). That language concedes that Codal could not quantify its damages and that some of its alleged losses were speculative.

¶ 30    In *Hardiman*, this court affirmed a grant of summary judgment against a political candidate who claimed that he lost thousands of votes, a $500 speaking engagement fee, and more than $200,000 in campaign contributions due to the defendant's false statement that the candidate was a former gang member. *Id.* ¶¶ 25-28. We explained that a loss of votes is not pecuniary, and that the record did not support the candidate's claimed monetary losses. *Id.* ¶¶ 27-28. *Hardiman* shows that even if a plaintiff claims to have lost specific amounts of money—which Codal did not—it must prove that claim with record evidence at summary judgment. *Hardiman* also illustrates that a loss of reputation, whether among voters, employees, or customers, is not pecuniary and does not constitute special damages for purposes of defamation *per quod*.

¶ 31    Whether a plaintiff alleged special damages sufficient to support a defamation *per quod* claim is often decided in the context of a motion to dismiss. In that context, Illinois courts have found that damages like those that Codal alleged are insufficient. See, *e.g.*, *Anderson*, 172 Ill. 2d

at 416-17 (allegation that the plaintiff suffered loss of "gainful employment and wages" was insufficient to support claim for defamation *per quod*); *Rivera v. Allstate Insurance Co.*, 2021 IL App (1st) 200735, ¶ 51 (allegations that prospective employers would not hire the plaintiffs were insufficient); *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 695 (2000) (allegations that the plaintiffs "suffered a loss of business and income" and "great embarrassment" were insufficient); *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 870 (1995) (the plaintiff was unable to obtain a franchise); *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 395 (1995) (loss of "patients who would have otherwise presented themselves for treatment"); *Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 318 (1993) (former customers refused to deal with the plaintiff, so he was unable to sell his product and lost commissions and income). One court has found that a third party's decision to stop doing business with the plaintiff supported a claim for defamation *per quod*. *Becker v. Zellner*, 292 Ill. App. 3d 116, 127 (1997). However, Codal did not claim that customers actually stopped doing business with it due to Same Condition's posts; Codal merely claimed that customers expressed concerns about those posts. In addition, this court has held that a surgeon's loss of $861,506 in income due to accusations of medical malpractice sufficiently supported a claim for defamation *per quod*. *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶¶ 15, 62. In this case, Codal has not connected Same Conditions's disparaging posts to specific monetary losses.

¶ 32     In granting summary judgment, the circuit court concluded that Same Condition's posts were "defamatory," but that Codal presented no evidence of its damages resulting from that defamation. The circuit court overlooked that special damages are an element of defamation *per quod*. See *Rivera*, 2021 IL App (1st) 200735, ¶ 60. The court expressly found that Codal did not

- 13 -

prove special damages. Therefore, the only proper conclusion was that Codal did not establish an element of defamation *per quod* and Same Condition was not liable on that counterclaim. Therefore, it was error to grant summary judgment in Codal's favor on its defamation *per quod* counterclaim.

¶ 33    Codal's brief does not address its failure to prove or even allege special damages in connection with its defamation *per quod* counterclaim. Accordingly, Codal has forfeited any argument on this issue. See Ill. S. Ct. R. 341(h)(7), (i) (eff. Oct. 1, 2020) ("[p]oints not argued are forfeited").

¶ 34    Having reversed the grant of summary judgment in favor of Codal on its defamation *per quod* counterclaim, we must decide whether to remand that counterclaim for trial. Neither party has requested remand and Codal has dismissed its other remaining counterclaims by agreement of the parties. Aside from collections proceedings, this case is over, and the circuit court has stricken it from the call. As a practical matter, we see no need to remand a defamation *per quod* counterclaim on which Codal has never presented evidence of special damages. The most efficient way to resolve this remaining counterclaim is by entering judgment for Same Condition, which we may do even though Same Condition did not move for summary judgment. See *West Suburban Bank v. City of West Chicago*, 366 Ill. App. 3d 1137, 1146 (2006) ("[W]hen a court denies one party's motion for summary judgment, it is authorized to enter judgment in favor of the other party, even though that party does not have a pending motion for summary judgment."). Summary judgment on the defamation *per quod* counterclaim is a question of law (see *id.*) because there is no dispute that Codal presented no evidence of special damages, and the only question is whether special damages are an element of defamation *per quod*. As explained above, they are.

¶ 35　Although we reverse the grant of summary judgment to Codal on its defamation *per quod* counterclaim, the permanent injunction that the court entered as a remedy for Same Condition's disparaging online posts remains in place. The circuit court granted Codal summary judgment on its commercial disparagement counterclaim, which Same Condition does not challenge on appeal. Codal's commercial disparagement counterclaim was based on Same Condition's online posts accusing Codal of being unprofessional and dishonest, so the permanent injunction was a proper remedy. See *Streif v. Bovinette*, 88 Ill. App. 3d 1079, 1082 (1980) (commercial disparagement may justify injunctive relief).

¶ 36　Same Condition's reply brief argues that "Codal's commercial disparagement [counter]claim is faulty for the same reason as its defamation *per quod* claim;" namely, a lack of special damages. Same Condition cites federal case law indicating that special damages are an element of certain claims of commercial disparagement. For example, the Northern District of Illinois has explained that "[s]tatements that accuse a businessman of outright dishonesty or reprehensible business methods *** are like defamation *per se*," so "the plaintiff *** need not plead special damages," but "[l]ess extreme statements *** are actionable only with special damages." *Unique Concepts, Inc. v. Manuel*, 669 F. Supp. 185, 190 (N.D. Ill. 1987). However, the decisions of federal district courts are not binding upon us (*Vulpitta v. Walsh Construction Co.*, 2016 IL App (1st) 152203, ¶ 34), and we have found no Illinois authority holding that special damages are an element of commercial disparagement. In any event, Same Condition only raised this challenge to Codal's commercial disparagement counterclaim in its reply brief, and an argument raised for the first time in a reply brief is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("[p]oints not argued are forfeited and shall not be raised in the reply brief"). Accordingly,

we reverse the circuit court's grant of summary judgment in Codal's favor on its defamation *per quod* counterclaim and enter judgment in Same Condition's favor on that counterclaim due to Codal's failure to prove special damages.

¶ 37                                    C. Attorney Fees

¶ 38    Finally, Same Condition challenges the circuit court's award of attorney fees and costs to Codal for prevailing on its breach of contract counterclaim at summary judgment. Same Condition argues that "Codal should not be permitted to recover fees for its claims for defamation or its failed claim alleging violation of Illinois statutes," presumably referring to Codal's Deceptive Trade Practices Act counterclaim. Specifically, Same Condition contends that the parties' contract limits Codal's recovery of attorney fees to "pursuing 'collections' or 'legal action against [Same Condition] for its non-payment."

¶ 39    Same Condition did not raise any of these arguments in the circuit court. It did not file objections or a response to Codal's fee petition. The motion to vacate or reconsider that Same Condition filed approximately a month after the attorney fee award did not address that ruling. While Kumar sent the court an *ex parte* letter arguing that Codal should not receive any attorney fees, the letter cited no legal authority and was contrary to the parties' contract that expressly authorized attorney fees. Same Condition's reply brief claims that it "objected to the fee award at oral argument" but cites nothing in the record to support that. When a party has the opportunity to object to a fee petition but fails to do so, the party forfeits any challenge to the amount and reasonableness of the attorney fees sought in the petition. *Application of Cook County Collector*, 144 Ill. App. 3d 604, 611 (1986). That is the case here.

¶ 40    As a practical matter, Codal's attorney fees and costs are already in collections proceedings, so revisiting Codal's entitlement to attorney fees and costs now would be unworkable. Furthermore, Same Condition should have presented its objections to the circuit court because the circuit court was in a better position than we are to assess the reasonableness of Codal's attorney fees. See *Stein v. Feldmann*, 85 Ill. App. 3d 973, 974 (1980). The circuit court personally observed Codal's attorneys in the almost five years that this case has been pending and could judge their skill and hourly rates accordingly. See *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 139 (2008). The circuit court was also better equipped to determine which tasks were necessary to Codal's prosecution of this case. Accordingly, we affirm the circuit court's award of fees and costs.

¶ 41                                III. CONCLUSION

¶ 42    For the foregoing reasons, we dismiss Same Condition's appeal of the permanent injunction. We reverse the grant of summary judgment in favor of Codal on its defamation *per quod* counterclaim and enter judgment in Same Condition's favor on that counterclaim. We affirm the award of attorney fees and costs to Codal for prevailing on its breach of contract counterclaim.

¶ 43    Dismissed in part, reversed in part, affirmed in part.